IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**ROBERT ALAN MCCOMAS,**

     **Plaintiff,**

        **v.**                     **Civil Action No. 2:15-cv-14150**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security**

     **Defendant.**

## MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for supplemental security income (SSI) under Title XVI of the Social Security Act. The parties consented to the undersigned United States Magistrate Judge ordering the entry of final judgement. Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12).

Robert Alan McComas (hereinafter referred to as Claimant), applied for SSI on April 17, 2012, alleging disability beginning April 13, 2012.[1] The claim was denied initially on August 7, 2012, and upon reconsideration on December 20, 2012. Thereafter, Claimant filed a written request for a hearing before an Administrative Law Judge (ALJ) on February 19, 2013. A hearing was held on May 14, 2014, in Huntington, West Virginia. On June 27, 2014, the ALJ denied Claimant's application for SSI (Tr. at 24). On August 25, 2014, Claimant requested that the ALJ's

---

[1] Claimant originally asserted a disability onset date of March 1, 1991, but subsequently submitted a letter dated May 14, 2014, amending the onset date to April 13, 2012 (Tr. at 193).

decision be reviewed by the Appeals Council (AC) (Tr. at 7). On August 17, 2015, the AC denied Claimant's request for review (Tr. at 1-6). Thereafter, Claimant filed the instant civil action.

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2015). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration,

persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4)    When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the

4

> significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the application date, April 13, 2012 (Tr. at 13).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of spine disorders, osteoarthritis and chronic pain syndrome.  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1  (Tr. at 15).  The ALJ then found that Claimant has a residual functional capacity (RFC) to perform sedentary work, reduced by nonexertional limitations[2]  (Tr. at 16).  The ALJ concluded that transferability of job skills is not an issue because Claimant has no past relevant work  (Tr. at 22).  Claimant could perform jobs such as inspector, sorter and a surveillance system monitor.  The vocational expert testified that these positions exist in significant numbers in the national economy (Tr. at 23).  On this basis, benefits were denied. (*Id.*)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere

---

[2] Claimant may stand and walk in combination up to four hours a day and may sit up to six hours a day.  Claimant may never climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, crouch or crawl.  Claimant can seldom (defined as 20% or less frequently) kneel.  Claimant may frequently reach in any direction bilaterally.  Claimant should avoid concentrated exposure to extreme cold and pulmonary irritants and may occasionally be exposed to vibration and hazards.  Claimant may sit or stand at will at the workstation without loss of productivity (Tr. at 16).

> scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

## Claimant's Background

Claimant was born on July 12, 1965. Claimant graduated from high school and took auto mechanics classes in trade school during his senior year of high school (Tr. at 39). At the time of the hearing, Claimant was separated from his spouse and lived alone (Tr. at 40). Claimant has a driver's license. (*Id.*) Although he does not own a car, he borrowed his mother's car to drive himself to the hearing (Tr. at 41). Claimant's son lives approximately three miles from Claimant's home and Claimant's daughter lives approximately 15 miles from Claimant's home (Tr. at 43).

## The Medical Record

This Court adopts the medical record asserted by Claimant and Defendant to the extent as follows:

On March 1, 2012, Claimant established primary care with Lucia Soltis, M.D., at the Lincoln County Primary Care Center (Tr. at 305-307). Claimant stated that he had not been to a doctor "in a while" (Tr. at 305). Claimant complained about constant low back pain that radiated

6

down his legs and that was worse in the morning and that he felt better with stretching. (*Id.*) Claimant stated that he had been taking Lodine. On examination, Claimant was in no acute distress (Tr. at 306). Claimant had tenderness to palpation of the back, scoliosis, and pain on positive straight leg raise testing. (*Id.*) X-rays showed mild degenerative disc disease of the cervical spine and grade four spondylolisthesis of L5 on S1 (Tr. at 307-309). Dr. Soltis diagnosed Claimant with backache, neck pain, and lumbosacral neuritis or radiculitis (Tr. at 307). Dr. Soltis prescribed etodolac (a non-steroidal anti-inflammatory), gabapentin (a pain medication), and cyclobenzaprine (a muscle relaxant).

On March 19, 2012, Claimant was seen at the Prestera Center for outpatient care for depression (Tr. at 323). Claimant reported crying most days and that he tried not to be alone. On examination, Claimant was withdrawn and had pressured speech, a blunted affect, and some suicidal ideation. However, he had a normal appearance, normal thought content, full orientation, normal memory, appropriate eye contact, and normal motor activity (Tr. at 324-325). Claimant was diagnosed with major depressive disorder (Tr. at 325). Charles R. Hoover, BA, recommended individual therapy and prescribed Celexa and Trazodone (Tr. at 326).

At his initial psychological assessment on March 21, 2012, Claire Belgrave, M.D., reported that Claimant had a normal appearance, normal thought content, normal motor behavior, linear thought process, a cooperative attitude, full orientation, sad/anxious mood, congruent affect, fair memory, fair concentration, average intelligence, and limited insight and judgment (Tr. at 328). Dr. Belgrave recommended individual therapy and prescribed Celexa and Trazadone.

Claimant returned to Dr. Soltis on April 5, 2012 (Tr. at 310). Claimant reported that medication helped "some" and that his pain was the worst in the morning and improved

throughout the day. (*Id.*) Claimant was in no acute distress (Tr. at 311). Dr. Soltis continued Claimant's medication and referred him to a neurosurgeon.

At a medication check on April 18, 2012, Claimant had a euthymic mood, a congruent affect, and no suicidal ideation (Tr. at 329). He continued to have normal speech, normal thought form and content, and normal motor activity. His global assessment of functioning (GAF)[3] score was 55. On July 12, 2012, Claimant reported "doing good." His GAF score was 60 (Tr. at 356). Dr. Belgrave assessed Claimant in August 2012 and assigned him a GAF score of 70 (Tr. 357).

On April 25, 2012, Claimant consulted with Rida Mazagri, M.D., a neurosurgeon, regarding his low back pain (Tr. at 350). Dr. Mazagri opined that Claimant was a healthy looking gentleman in moderate distress (Tr. at 352). Claimant had normal tandem, heel, and toe walking and good coordination (Tr. at 353). Claimant had normal strength, intact sensation and normal reflexes. (*Id.*) An MRI revealed grade four spondylolisthesis at L5-S1 with a severe acquired canal and high-grade neural foraminal stenosis at L5-S1. Dr. Mazagri stated that Claimant would "most probably" need surgery (decompression and fusion), but he wanted to first obtain a flexion-extension x-ray of Claimant's lumbar spine. (*Id.*) Dr. Mazagri prescribed a short course of steroids and Lortab (Tr. at 351, 353).

On May 22, 2012, Claimant returned to Dr. Mazagri (Tr. at 342, 344-345). The flexion-extension x-ray showed grade four spondylolisthesis, no further instability with flexion or extension, and presumed neuroforaminal compromise at the lumbosacral junction (Tr. at

---

[3] The GAF score was a numeric rating used by mental health professionals to measure the functional impairment of an individual based on a 0 to 100 scale in accordance with the *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (*DSM-IV*). A GAF score of 61-70 meant the patient exhibited mild symptoms or functional difficulties, and a score of 51-60 indicated moderate symptoms or difficulties. *Id.*

348). A CT scan of Claimant's lumbar spine showed long-standing spondylolisthesis at L5 on S1 (Tr. at 346). Dr. Mazagri discussed different treatment options with Claimant (Tr. at 344). Claimant agreed to proceed with a posterior lumbar decompression and fusion of L4 to S1 and to the sacrum and possible fusion of S1 to L5. (*Id.*)

On June 12, 2012, Dr. Mazagri re-evaluated Claimant in advance of his surgery the next week (Tr. at 339-341). Claimant decided to postpone his surgery because he was concerned about a tooth abscess and wanted to donate his own blood (Tr. at 340). On examination, Claimant walked bending forward without a limp. He moved his extremities well with good strength, and he had intact sensation and no neurological change. (*Id.*)

Pedro Lo, M.D., conducted a review of Claimant's medical records on July 10, 2012 (Tr. at 72-73). He assessed that Claimant could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; push and pull without limitation other than the lifting and carrying restrictions; climb ramps and stairs, kneel, crouch, and crawl without limitation; and frequently climb ladders, ropes, and scaffolds and stoop. (*Id.*)

On August 6, 2012, Jeff Boggess, Ph.D., reviewed Claimant's medical records (Tr. at 70-71). He assessed that Claimant had only mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and one or two repeated episode of decompensation (Tr. at 70). Dr. Boggess found that Claimant's affective disorder was non-severe. On December 18, 2012, John Todd, Ph.D. reviewed Claimant's medical records and affirmed Dr. Boggess' assessment (Tr. at 82-83). Dr. Belgrave recommended that Claimant undergo individual therapy and continue his medications (Tr. at 382-383).

9

On approximately August 6, 2012, Rabah Boukhemis, M.D., conducted a review of Claimant's medical records (Tr. at 84-85). He assessed that Claimant could lift or carry up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for up to four hours in an eight-hour workday; sit about six hours in an eight-hour workday; push and pull without limitation subject to the lifting and carrying restrictions; occasionally climb, kneel, crouch, and crawl; frequently balance and stoop; avoid concentrated exposure to extreme temperatures, fumes, odors, dusts, gases, and poor ventilation; and avoid even moderate exposure to vibrations, (*Id.*)

Kip Beard, M.D., performed a consultative examination of Claimant and reviewed Claimant's March 2012 x-ray on December 6, 2012 (Tr. at 369-373). Claimant complained of back pain radiating into his legs (Tr. at 369). Claimant reported that he was diagnosed with grade four spondylolisthesis as early as 1991 or 1992. (*Id.*) Claimant also reported that he declined back surgery recommended by Dr. Mazagri, and had only taken medications for treatment. (*Id.*) He reported that Ibuprofen helped minimally (Tr. 369).

Dr. Beard noted that Claimant walked with a stiff and uncomfortable gait but without a limp (Tr. at 371). Claimant did not require any aids for ambulation. Dr. Beard report that Claimant appeared comfortable in a sitting and supine position, but had mild difficulty rising from his chair and stepping up and down from the examination table. (*Id.*) Claimant reported mild tenderness and mild discomfort on range of motion testing in his cervical spine. While x-rays revealed mild degenerative disc disease at C5-6, there was no neurologic compromise (Tr. at 370-371, 373). As to Claimant's lumbar spine, x-rays showed grade four spondylolisthesis (Tr. at 370-372). He had a diminished lumbar lordosis, spasms, moderate motion loss, and mild pain on straight leg testing, which did not correlate with reflex

discrepancy, weakness, atrophy, or sensory loss (Tr. at 372). Claimant had mild Heberden's sign but no Bouchard's sign in his hands consistent with early osteoarthritis, but he had full muscle strength, normal range of motion, normal reflexes, and no tenderness in his arms, hands, legs, knees, and ankles (Tr. at 371-72). Dr. Beard diagnosed Claimant with chronic low back pain with grade four spondylolisthesis at L5 on S1 with bilateral lumbar radicular symptoms, chronic cervical strain with cervical degenerative disc disease, and osteoarthritis (Tr. at 372).

Claimant transferred from Dr. Belgrave to Nika Razavipour, M.D., in June 2013 (Tr. at 386, 391). Claimant reported that Celexa and Trazadone were helpful, and Dr. Razavipour continued to prescribe the same medications. (*Id.*) Dr. Razavipour reported that Claimant had an appropriate appearance, normal eye contact, a cooperative attitude, normal motor activity, normal speech, appropriate and euthymic mood, goal-directed thought process, and appropriate thought content (Tr. at 391-392). Claimant also had no suicidal ideation and no hallucinations (Tr. at 391).

On September 17, 2013 and December 10, 2013, Claimant reported "doing fine" and sleeping well during his sessions with Dr. Razavipour (Tr. at 395-402). Dr. Razavipour noted no changes to Claimant's mental status since his examination in June 2013 (Tr. at 395-396, 399).

At Claimant's counsel's request, consultant Paul Craig, III, M.D., reviewed Claimant's medical records and examined Claimant on April 26, 2014 (Tr. at 374). Dr. Craig stated that Claimant had severe grade four spondylolisthesis of L5 on S1 with a long history of chronic low back pain, progressive in nature, with component L5 on S1 nerve root irritation and inflammation. (*Id.*) He also noted that Claimant had other medical problems including major

depression, left-sided internal capsule lacunar infarct, hypertension, hyperlipidemia, diabetes mellitus type II, esophageal reflux with limited medical intervention. Dr. Craig opined that Claimant would be unable to work a regular work week (eight-hour a day, five days a week) and unable to reasonably compete for or maintain gainful employment. (*Id.*) Dr. Craig noted that further surgical, medical, and psychiatric intervention was needed, and that Claimant could possibly improve with intervention.

Dr. Craig filled out a form, and indicated that Claimant could lift or carry less than ten pounds; walk/stand a total two to four hours a day and walk one hour without interruption; sit a total of four to six hours a day for one to two hour without interruption; rarely kneel; never climb, balance, stoop, crouch, crawl; and limited reaching and pushing/pulling (Tr. at 377). Dr. Craig assessed that Claimant could not perform work in an industrial setting where he was exposed to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. Dr. Craig also assessed that Claimant had "psychological issues [that] further complicate his employment potential and limit his ability to compete for and maintain gainful employment." (*Id.*)

On May 13, 2014, Dr. Razavipour completed a form mental status statement (Tr. at 403). Dr. Razavipour stated that Claimant had major depression disorder and chronic back pain. He assigned Claimant a GAF score of 50 and indicated his prognosis was fair. (*Id.*) Dr. Razavipour checked boxes indicating that Claimant had several limitations, including, but not limited to, marked limitations in interacting appropriately with the public, supervisors, and coworkers; responding appropriately to usual work situations and to change in routine work setting; and extreme emotional withdrawal or isolation, mood disturbance, and sleep disturbance (Tr. at 404-405).

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the decision of the ALJ is not supported by substantial evidence because the ALJ failed to properly weigh the opinion of Claimant's treating psychiatrist and "other consulting sources" (ECF No. 11). Claimant argues that the ALJ failed to properly consider SSR 96-9p by failing to factor in the impact Claimant's mental limitations would have on Claimant's ability to perform sedentary level work. Additionally, Claimant asserts that his subsequent award of supplemental security income benefits constitutes new, material and additional evidence which allow a reversal or remand of the ALJ's decision. (*Id.*)

Defendant asserts that Claimant has not proven that he is disabled under the Social Security Act (ECF No. 12). Defendant asserts that substantial evidence supports the ALJ's evaluation of the opinions of Claimant's treating physician and examining physicians. Also, Defendant avers that the ALJ reasonably considered the impact of Claimant's mental limitations found by Claimant's treating psychiatrist, Nika Razavipour, M.D., when concluding that Claimant can perform sedentary work. (*Id.*) Defendant asserts that Claimant's subsequent award of SSI benefits does not warrant remand.

<u>Discussion</u>

<u>Subsequent Award of Supplemental Security Income Benefits</u>

Claimant's current application to which this civil action addresses was filed on April 17, 2012. The ALJ denied Claimant's current application on June 27, 2014. Claimant filed a "subsequent"[4] application for SSI on November 9, 2015. On January 20, 2016, Claimant was found to be disabled pursuant to the "subsequent" application and was awarded SSI benefits as of his application date in November 2015 (ECF No. 11-1). This "subsequent" application was

---

[4] The application filed on November 9, 2015, will be referred to as Claimant's "subsequent" application simply to distinguish which application is being discussed throughout this order.

awarded benefits after the ALJ denied Claimant's currently disputed application on June 27, 2014.

Claimant argues "Cases within this District have consistently held that a disability determination that commences the day after an administrative law judge's opinion that a plaintiff is not disabled constitutes new and material evidence necessitating remand."  (ECF No. 11) *See Bradley v. Barnhart*, 463 F. Supp. 2d 577 (S.D. W.Va. 2006); *Reichard v. Barnhart*, 285 F. Supp. 2d 728 (S.D. W.Va. 2003).   However, unlike the cases cited by Claimant, the "subsequent" application's award was not effective one day after the ALJ's decision in the current matter.  The ALJ's decision in the current matter was dated June 27, 2014, and the "subsequent" application's award was effective on November 9, 2015.

Moreover, Claimant states in *Bradley* "the Plaintiff acknowledges another line of cases rejecting the view that an award of benefits on a second application, which commenced at or near the time of a decision denying benefits on a first application, is by itself, new and material evidence." (*Id.*)   *See Allen v. Commissioner of Social Security*, 561 F. 3d 646 (6th Cir. 2009); *Baker v. Commissioner of Social Security*, 520 Fed. App'x 228 (4th Cir. 2013).  The cases cited by Claimant hold that "[A] subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g)." *Baker* (*citing Allen*, 561 F. 3d at 646).

The claimant in *Allen* relied on *Hayes v. Astrue*, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007), and *Bradley v. Barnhart, 463 F. Supp. 2d 577 (S.D.W. Va. 2006)*, for the proposition that "where a second social security application finds a disability commencing at or near the time a decision on a previous application found no disability, the subsequent finding of a disability may constitute new and material evidence."  *Hayes*, 488 F. Supp. 2d at 565; *see also Reichard v. Barnhart*, 285 F. Supp. 2d 728, 734 (S.D. W.Va. 2003); *Luna v. Astrue*, No. CIV 07-719-PHX-MHB, 2008 U.S.

14

Dist. LEXIS 108381, 2008 WL 2559400, at *2 (D. Ariz. June 23, 2008); *Graham v. McMahon*, No. 7:06cv00475, 2007 U.S. Dist. LEXIS 49504, 2007 WL 2021893, at *2 (W.D. Va. July 6, 2007). However, the court in *Allen* found that "To the extent that these district court opinions stand for the proposition that the subsequent determination is itself new evidence meriting remand, these opinions misapply § 405(g)…" The court distinguished the cases relied on by the claimant by citing *Bruton v. Massanari*, 268 F. 3d 824 (9th Cir. 2001), a case in which the claimant's § 405(g) request based on a subsequent favorable determination was denied because the second application, "involved different medical evidence, a different time period, and a different age classification." *Id.* at 827.

In the present matter, Claimant has failed to demonstrate that the current application and Claimant's subsequent application concern the same period of time. The current application period begins on Claimant's disability onset date of March 13, 2012, through the date of the ALJ's decision on June 27, 2014. A decision awarding a subsequent application beginning on the application date of November 9, 2015, does not overlap.

More so, an award in a subsequent application in itself is not enough to warrant reversal or remand. See *Baker v. Commissioner of Social Security*, 520 F. Appendix 228, 229 n.1 (4th Cir. 2013); *see also Phillips v. Astrue*, 2013 WL 485949 at * (W.D. Va. Feb. 5, 2013) (holding that remand based only upon a subsequent finding of disability is incorrect under sentence six); *Meadows v. Astrue*, 2010 WL 1380117, at *4 (S.D.W .Va. Mar. 31, 2010) (Berger, J.) (declining to adopt R&R reasoning that subsequent finding of disability was "new evidence"); *Bragg v. Astrue*, 2010 WL 4919492, at *4 (S.D.W. Va. Sept. 3, 2010) (denying remand based on subsequent award with one day between denial and award). The Fourth Circuit has held that "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those

earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." *Albright v. Apfel*, 174 F.3d 473, 476 (4th Cir. 1999).  The court in *Albright* found "the SSA's treatment of later filed applications as separate claims is eminently logical and sensible." *Id.*

In the present matter, Claimant has failed to demonstrate that the evidence relied on in awarding the "subsequent" application pertains to the period in the current application.  Although Claimant concedes that "the underlying evidence, not the award, will determine the propriety of a remand," Claimant asserts that he will make "at least a general showing of the nature of the new evidence" and that "such new evidence pertains to the period under consideration in this [current] appeal" just as soon as such evidence is made available to undersigned counsel (ECF No. 11). Claimant's counsel stated "The undersigned counsel intends to request and obtain a copy of the Plaintiff's file in his SSI application of 11/09/2015 and thereafter provide this Court with the basis/evidence underlying the Plaintiff's subsequent award of supplemental security income benefits."  (*Id.*) Upon review of the record, it does not appear that Claimant's counsel submitted Claimant's file into record. Furthermore, Claimant asserted that "It is the Plaintiff's contention that the physical and mental impairments which justified his subsequent award of supplemental security income benefits are the same impairments alleged in the instant case."  (*Id.*)

The only evidence provided by Claimant regarding his "second" application is the award letter attached to Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11-1). There is no evidence regarding the severe impairments found in the subsequent award and no explanation as to how that relates to and supports Claimant's current application.  Therefore, Claimant has failed to demonstrate that his subsequent award of supplemental security income benefits constitutes new, material and additional evidence.

16

<u>Weight Afforded Medical Opinions</u>

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 416.927(d)(2) (2015). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." *Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 416.927(d)(2) (2015). Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability, consistency and specialization. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 416.927(d)(2).

Under § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

The ALJ is not required in all cases to give the treating physician's opinion greater weight than other evidence in determining whether a claimant is disabled under the Act. *Johnson v. Barnhart*, 434 F.3d 650, n. 5 (4th Cir. 2005). The ALJ retains the duty to analyze treating source opinions and judge whether they are well-supported by medically acceptable evidence and consistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2) and 416.927. If a medical opinion is not supported by relevant evidence or it is inconsistent with the record as a whole, it will be accorded significantly less weight. *See* 20 C.F.R. §§ 404.1527 (c)(3), (4) and 416.927; *Craig*, 76 F.3d at 590 ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Moreover, a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work. These decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues. *See* 20 C.F.R. §§ 404.1527(d)(1)-(3) and 416.927; Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2 (S.S.A.).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as

they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id.*

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id*

Further, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, non-treating sources, and other non-examining sources who do not work for us." (*Id.*)  Examples of the kinds of factors that an administrative law judge must consider when evaluating the findings of State agency medical and psychological consultants are provided in paragraph (c)[5] of §§ 404.1527 and 416.927.

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

---

[5] Unless a treating source's opinion is given controlling weight, all of the following factors will be considered in deciding the weight given to any medical opinion: (1) Examining relationship; (2) Treatment relationship; (3) Supportability; (4) Consistency; (5) Specialization; and (6) Other factors.  20 C.F.R. 416.927(c) and 404.1527.

In the present case, Claimant asserts that the ALJ failed to properly weigh the opinions of Claimant's treating psychiatrist and other consulting sources (ECF No. 11). The ALJ gave "little weight" to the opinion of Nika Razavipour, M.D., Claimant's treating psychiatrist. The ALJ discussed the opinion of Dr. Razavipour and found that Dr. Razavipour's opinion is "substantially inconsistent with her treatment notes" (Tr. at 22). The ALJ held that in Dr. Razavipour's "last three examinations of the claimant, she found him to be cooperative with normal eye contact" which is inconsistent "with the social limitations she opined." Dr. Ravazipour opined that Claimant had marked limitations when appropriately dealing with the public, supervisors and coworkers. Although Dr. Razavipour found Claimant's affect to be appropriate, she opined that Claimant had persistent disturbances in his affect. Additionally, even though her examination notes reflect that Claimant reported that he was sleeping well with the use of Trazodone, Dr. Razavipour opined that Claimant had an extreme limitation in sleep disturbances. As the ALJ pointed out inconsistencies in Dr. Razavipour's opinion and her treatment notes in the record, the undersigned finds that the ALJ properly weighed, discussed and determined the weight given to the opinion of Dr. Razavipour.

Claimant asserts that the ALJ did not give proper consideration to the opinions of Kip Beard, M.D., and Paul W. Craig, II, M.D., consulting examining physicians. Dr. Beard conducted a physical consultative examination of Claimant in December 2012. Claimant asserts that Dr. Beard stated that Claimant suffers from chronic low back pain with a grade 4 L5 on S1 spondylolisthesis with bilateral lumbar radicular symptoms and lumbar radiculitis, chronic cervical strain with cervical degenerative disk disease and osteoarthritis (Tr. at 367-373). Claimant argues that Dr. Beard found an alteration of normal lumbar curvature with muscle spasm and up to severe discomfort with moderate motion loss. (*Id.*) Further, Claimant asserts that Dr.

Craig stated the Claimant is unable to reasonably complete for or maintain gainful employment at this time based on a combination of medical and mental impairments.  Claimant argues that Dr. Craig stated that Claimant is in need of further surgical, medical and psychiatric intervention (Tr. at 374-381).

The ALJ discussed Dr. Beard's consultative examination of Claimant in depth (Tr. at 18-19).  The ALJ provided that Dr. Beard's examination reflected that Claimant was treating his physical impairments with medication only, walked without a limp and without ambulatory aids, was able to stand unassisted and had range of motion in Claimant's knees without any limitation, tenderness, effusion or swelling (Tr. at 18).

The ALJ considered Dr. Beard's diagnoses, including grade four spondylolisthesis with radicular symptoms and lumbar radiculitis, chronic cervical strain with cervical degenerative disc disease, osteoarthritis, and his findings that Plaintiff had diminished lumbar lordosis, spasm, and pain of range of motion in his lumbar spine (Tr. 19). Moreover, Plaintiff also failed to identify any functional limitations supported by Dr. Beard's examination that the ALJ did not already include in Plaintiff's RFC assessment. Rather, the ALJ fully accounted for Dr. Beard's findings in restricting Plaintiff to a limited range of sedentary work with an at-will sit/stand option and significant postural and environmental limitations (Tr. 16).

The ALJ pointed out that after Claimant's consultative examination by Dr. Beard in December 2012, Claimant was not examined again until April 2014 by Paul W. Craig II, M.D.. The ALJ held that "This limited treatment is not something one would expect for a totally disabled individual" (Tr. at 19).  The ALJ held that Dr. Beard's examination report only contained his objective findings and diagnoses.

In discussing the examination performed by Paul W. Craig II, M.D., in April 2014, the ALJ held that "Dr. Craig's records pertaining to the examination do not contain any objective findings" (Tr. at 19).  The ALJ explained that the examination not did indicate whether Dr. Craig performed range of motion testing, muscle strength testing, straight leg raise testing tenderness to palpitation testing, detection of muscle spasm testing or observed the claimant's gait. (*Id.*)  Further, the ALJ specifically stated that "while the claimant has been diagnosed with spine disorders, osteoarthisis and chronic pain syndrome, the undersigned has accounted for these impairments in the restriction contained in the claimant's RFC."  The ALJ gave little weight to the opinion of Dr. Craig finding that Dr. Craig's opinion is inconsistent with the objective medical evidence and Claimant's residual functional capacity. The ALJ stated that Dr. Craig only examined Claimant once (Tr. at 21).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits.  'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").  Accordingly, the ALJ reasonably considered and discussed the findings of Dr. Razavipour, Dr. Beard and Dr. Craig.

RFC

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. An

individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p. The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms; *see also* S.S.R. 96-8p. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d at 636 (quoting S.S.R. 96-8p). Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue,* 2011 WL 2688975, at *3 (E.D.Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock v. Astrue,* 667 F.3d 470, at 472 (4th Cir. 2012). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal

23

requirements to the record evidence." *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir.2013). The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox v. Colvin,* 632 Fed.Appx. 750, 754 (4th Cir.2015) (quoting *Radford,* 734 F.3d at 295).

The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." *Pearson v. Colvin,* 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. *Radford,* 734 F.3d at 296; *see also Brown v. Colvin,* 639 Fed.Appx. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding `in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. *See Mascio,* 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").  An RFC that fails to include a function-by-function assessment may result in the ALJ overlooking some of a claimant's limitations or restrictions, which could lead to an incorrect determination of exertional level of work the claimant can perform.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 404.1546(c). "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability."  SSR

No. 96-5p.  An RFC assessment is "based on consideration of all relevant evidence in the case record."  Social security rulings further provide that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR No. 96-8p.  Additionally, while an ALJ is not required to incorporate all evidence into the RFC, an ALJ "must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."  SSR No. 96-8p.

In the present matter, the ALJ concluded that Claimant has a sedentary RFC except Claimant may stand and walk in combination up to four hours a day and may sit up to six hours a day.  Claimant may never climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, crouch or crawl.  Claimant can seldom (defined as 20% or less frequently) kneel.  Claimant may frequently reach in any direction bilaterally.  Claimant should avoid concentrated exposure to extreme cold and pulmonary irritants and may occasionally be exposed to vibration and hazards.  Claimant may sit or stand at will at the workstation without loss of productivity (Tr. at 16).

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  Social Security Ruling 96-9p provides that "[i]n order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period and an afternoon break at approximately 2-hour intervals."

Claimant asserts that the ALJ did not factor the mental limitations set forth by Dr. Razavipour into his decision that Claimant has the RFC to perform sedentary work.  Claimant's

counsel did not elaborate on this argument beyond this statement in Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11).  Upon review of the record, the ALJ discounted Dr. Razavipour's opinion finding that it was inconsistent with and unsupported by Claimant's treatment records, therefore, the ALJ did not fail to consider Claimant's mental limitations in determining Claimant's level of work ability (Tr. at 21).

<u>Conclusion</u>

After careful consideration of the evidence of record, this Court finds that the Commissioner's decision is supported by substantial evidence.  Claimant has failed to demonstrate that his subsequent award of supplemental security income benefits constitutes new, material and additional evidence.  Additionally, the ALJ reasonably considered and discussed the findings of Dr. Razavipour, Dr. Beard and Dr. Craig.  In regards to Dr. Razavipour's findings, the ALJ did not fail to consider SSR 96-9p and determine whether Claimant's mental limitations would have an effect on Claimant's ability to perform sedentary level work.

For the reasons set forth above, the undersigned hereby find that this Court shall **DENY** the Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 11) to the extent Plaintiff seeks remand pursuant to sentence four of 42 U.S.C. § 405(g), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from this Court's docket.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Date:   March 28, 2017.

Dwane L. Tinsley
United States Magistrate Judge